UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PETER SYM, | CIVIL ACTION NO. |
| PLAINTIFF, | 3:03 CV 00932(SRU) |
| v. | |
| ATLAS FENCE d.b.a. ATLAS OUTDOOR, | |
| DEFENDANT. | December 23, 2003 |

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS

The Plaintiff, Peter Sym, hereby submits this Memorandum of Law in Opposition to Defendant's Motion to Strike Counts One, Three, Four, Five, Six, Seven and Eight of the Complaint. Plaintiff, by way of his Amended Complaint, filed contemporaneously to this memorandum, has stated sufficient facts to set forth valid claims for the following: discrimination on the basis of age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. (Amended Complaint, Count One), discrimination on the basis of age in violation of Conn. Gen. Stat. § 46a-60(a)(1) (Amended Complaint, Count Two), retaliation in violation of Conn. Gen. Stat. § 46a-60(a)(4) (Amended Complaint, Count Three), breach of implied contract (Amended Complaint, Count Four), promissory estoppel (Amended Complaint, Count Five) and negligent misrepresentation (Amended Complaint, Count Six). Plaintiff has removed all language purporting to set forth a claim for violation of Title VII. Upon review and acting in good faith, Plaintiff has withdrawn Counts Five and Eight. Plaintiff therefore respectfully requests that the Court DENY the Defendant's Motion to Dismiss.

I.  **Procedural Background**

The present action was commenced in federal court on May 23, 2003, alleging discrimination on the basis of age in violation of ADEA (Complaint, Count One), discrimination on the basis of age in violation of Conn. Gen. Stat. § 46a-60(a)(1) (Complaint, Count Two), retaliation in violation of Conn. Gen. Stat. § 46a-60(a)(4) (Complaint, Count Three), breach of implied contract (Complaint, Count Four), breach of implied covenant of good faith and fair dealing (Complaint, Count Five), promissory estoppel (Complaint, Count Six), negligent misrepresentation (Complaint, Count Seven) and wrongful discharge (Complaint, Count Eight). On September 29, 2003, Defendant moved to dismiss Counts One, Three, Four, Five, Six, Seven and Eight of the Complaint.

By way of his Amended Complaint, the Plaintiff has cured any alleged defects for the following claims: discrimination on the basis of age in violation of ADEA and Conn. Gen. Stat. § 46a-60(a)(1) (Amended Complaint, Counts One and Two), retaliation in violation of Conn. Gen. Stat. § 46a-60(a)(4) (Amended Complaint, Count Three), breach of implied contract (Amended Complaint, Count Four), promissory estoppel (Amended Complaint, Count Five) and negligent misrepresentation (Amended Complaint, Count Six). Plaintiff now submits this Memorandum of Law in Opposition to Defendant's Motion to Dismiss.

II.  **Facts**

Mr. Sym, a 54-year old man, began his employment with the Defendant in March, 1997. (Amended Complaint ¶¶ 9, 12.) Throughout the course of his employment, Mr. Sym performed his position in an above-average manner at all times and received several promotions and raises as a result of his good work. (Amended Complaint ¶¶ 13, 14.) Mr. Sym was eventually promoted to the position of Foreman of the Woodshop. (Amended Complaint ¶ 15.) Shortly

2

thereafter, the Plaintiff and Michael Picard, Defendant's President, attended a conference to learn about the making of PVC fencing. (Amended Complaint ¶ 16.) Thereafter, Mr. Picard, promoted the Plaintiff to the position of Shop Supervisor in the PVC Department. (Amended Complaint ¶ 17.) In 2000, Mr. Picard offered Mr. Sym the position of Store Manager as part of a plan for expansion, (Amended Complaint ¶ 18), and at first, Mr. Sym expressed some uncertainty about the transfer, as he did not have any background in sales, (Amended Complaint ¶ 20). Mr. Picard assured Mr. Sym that he was a very valued employee, and that if the new sales position did not work out, he could at any time be transferred back to his prior position of Foreman. (Amended Complaint ¶ 19.) In reliance on these assurances, Mr. Sym accepted the position of Store Manager at Defendant's Old Saybrook store. (Amended Complaint ¶ 22.)

Three weeks after Mr. Sym transferred to the Store Manager position, Mr. Picard told him that Defendant had been having difficulties with the Assistant Manager at the Southport location, and he asked Mr. Sym to accept a transfer to that position, with no loss of pay or benefits. (Amended Complaint ¶ 23.) Mr. Picard additionally told Mr. Sym that after one year of training in the store as an Assistant Manager, he would become the Manager when the current manager, Mr. Korfel, transferred to another location. (Amended Complaint ¶ 24.) In reliance on Mr. Picard's assurances, Mr. Sym accepted the position of Assistant Manager in Defendant's Southport store in April, 2001. (Amended Complaint ¶ 25.) Mr. Picard consistently commended Mr. Sym on his work, and told him that he was doing a great job. (Amended Complaint ¶ 27.) In September of 2001, Mr. Sym discussed his concerns about his sales position with Mr. Picard and John Nuvino, Vice President of Defendant. (Amended Complaint ¶ 28.) Again, Mr. Picard told Mr. Sym that he was going a good job and that he could request a transfer back to his Foreman position at any time, and that he would be transferred back to that position if his sales

position did not work out. (Amended Complaint ¶ 29.) In reliance on Mr. Picard's assurances, Mr. Sym agreed to continue in his position of Assistant Manager. (Amended Complaint ¶ 30.)

During the court of Mr. Sym's employment at Defendant's Southport store, neither Mr. Sym nor his supervisor, Mr. Korfel, were ever informed that Defendant's Southport store was not meeting expectations in sales or profit projections. (Amended Complaint ¶ 31.) Mr. Sym never received any negative feedback from Mr. Picard, Mr. Nuvino or Mr. Korfel about his job performance; (Amended Complaint ¶ 32) instead, he was continually assured that he was doing a "great job", (Amended Complaint ¶ 27, 29). Mr. Sym never received any verbal or written warnings concerning his performance. (Amended Complaint ¶ 33.) On February 1, 2002, with no forewarning or indication, Mr. Sym received a layoff slip from Defendant, which stated "lack of work." (Amended Complaint ¶ 34.) Mr. Sym was later told that he was being laid off because the Southport store had had poor sales and profits; (Amended Complaint ¶ 35) this surprised Mr. Sym, because, to the best of his knowledge, the Southport store held the highest profit margin, as compared to Defendant's other stores, (Amended Complaint ¶ 36).

Shortly after he received his layoff notice, Mr. Sym spoke with Defendant's controller, Bob Siracusa, who offered to send Mr. Sym's 401(k) paperwork to him. (Amended Complaint ¶ 38.) On April 29, 2002, Mr. Sym saw an advertisement in the local paper for Assistant Managers as well as several other positions for Defendant's stores. (Amended Complaint ¶ 41.) Mr. Sym then telephoned Susan Mignosa and asked that she forward his checks for his outstanding vacation pay and commissions. (Amended Complaint ¶¶ 42, 43). Ms. Mignosa told Mr. Sym that they had "not forgotten about him," that she would "look into it" with regard to his outstanding paychecks, but Mr. Sym never received the money owed to him by Defendant. (Amended Complaint ¶¶ 42, 44.) On May 14, 2002, Mr. Sym spoke with Rudy Sorrentino,

Defendant's new Controller, regarding his outstanding vacation and commission checks. (Amended Complaint ¶ 45.) Mr. Sorrentino told Mr. Sym that he would investigate the matter and stated that Mr. Sym would get what he was entitled to. (Amended Complaint ¶ 47.) Mr. Sym had several conversations with Mr. Sorrentino over the next few weeks, during which Mr. Sorrentino provided him with Mr. Picard's call phone number, advised the Mr. Sym to call Mr. Picard, and assured Mr. Sym that something would be done. (Amended Complaint ¶¶ 49-50.)

Mr. Sym called Mr. Picard and left several messages, but Mr. Picard never returned any of his calls. (Amended Complaint ¶ 52.) On July 31, 2002, Mr. Sym filed a complaint with the Commission on Human Rights and Opportunities. (Amended Complaint ¶ 53.) Only after receiving the complaint that Mr. Sym had filed with the CHRO, Mr. Picard contacted Mr. Sym on August 8, 2002, for a conference call between himself and Mr. Sym, John Uvino, Rudy Sorrentino and Mr. Sym's wife. (Amended Complaint ¶ 54.) Mr. Picard told Mr. Sym that he had exercised poor judgment and that he had been going through a divorce. (Amended Complaint ¶ 55.) Mr. Picard also told Mr. Sym that he had been a dedicated employee for more than five years, and that lawyers did not need to get involved. (Amended Complaint ¶ 56.) Mr. Picard then offered Mr. Sym $5,000 to "go away." (Amended Complaint ¶ 57.) Mr. Sym had requested and was entitled to more than $5,000, but Mr. Picard refused. (Amended Complaint ¶ 58.) Although Mr. Sym thereafter attempted to reach Mr. Picard on several occasions in an attempt to recover the money owed to him, Mr. Picard never returned his calls. (Amended Complaint ¶ 59.) Mr. Sym later learned that he was replaced with another employee who was fifteen (15) years younger than him. (Amended Complaint, Count One ¶ 66.)

## III. Argument

### A. Legal Standard for Denying Motion to Dismiss

In ruling on a motion to dismiss, the court must adhere strictly to tightly drawn principles designed to ensure that plaintiffs such as Mr. Sym, who have pleaded cognizable causes of action, are afforded their day in court. The court's function in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is not to decide whether the plaintiff will prevail at trial, "but merely to determine whether the complaint itself is legally sufficient." Festa v. Local 3 Int'l Brotherhood of Electrical Workers, 905 F.2d 35, 37, (2d Cir. 1990). "[T]he threshold that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low." Schaffer v. Ames Dept. Stores, Inc., 889 F. Supp. 41, 43 (D. Conn. 1990) (Squatrito, J.).

The court is limited to considering the facts stated in the complaint; Allen v. West Point Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991); and must accept them as true and draw all reasonable inferences in the plaintiff's favor. Papasan v. Allain, 478 U.S. 265, 283, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986); Easton v. Sundram, 947 F.2d 1011, 1014-15 (2d Cir. 1991), *cert. denied*, 504 U.S. 911 (1992); Mennone v. Gordon, 889 F.Supp. 53, 55 (D. Conn. 1995) (Goettel, J.). "The district court should deny the motion *unless it appears to a certainty that a plaintiff can prove no set of facts entitling him to relief.*" Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984) (emphasis added), citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. d. 2d 80 (1957).

### B. Plaintiff has cured any alleged defects by way of his Amended Complaint

The Plaintiff's proposed amendment cure alleged defects as alleged in Defendant's Motion to Dismiss. Should the Court grant Defendant's Motion to Dismiss, it may do so while granting Plaintiff leave to amend. *See* Ronzani v. Sanofi S.A. 899 F.2d 195, 198 (2d Cir. 1990)

6

("When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."). It is in the interests of judicial economy to grant the Plaintiff leave to amend his complaint at this time, rather than after granting Defendant's Motion to Dismiss.

### C. **Plaintiff respectfully deletes all references to Title VII in his Amended Complaint**

### D. **Plaintiff has sufficiently alleged a claim for discrimination on the basis of age in violation of ADEA in Count One of his Amended Complaint**

The Defendant argues that Count One should be dismissed because the Plaintiff has failed to make out a prima facie case of disparate treatment under Title VII. Count One of Plaintiff's original complaint purported to state a claim for "Violation of Title VII and the ADEA." Plaintiff concedes that he has not sufficiently alleged a prima facie case under Title VII, and maintains that any such reference to Title VII in the original complaint was made in error. Rather, Count One of the original complaint purported to state a claim for violation of the Age Discrimination in Employment Act of 1967. By way of his Amended Complaint, Plaintiff has deleted any and all references to Title VII, and has alleged sufficient facts to establish a claim for discrimination on the basis of age in violation of ADEA. (Amended Complaint, Count One.)

Claims brought under the ADEA are analyzed "under the same framework as claims brought pursuant to Title VII." Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000) (citations and internal quotation marks omitted). "[I]n order to establish a prima facie case of age discrimination . . . a plaintiff must show (1) that he was within the protected age group, (2) that he was qualified for the position, (3) that he was discharged, and (4) that the discharge occurred after circumstances giving rise to an inference of age discrimination." Id. (citations and internal quotation marks omitted). "[T]he burden of proof that must be met to establish a prima facie

7

case is minimal." Id., *citing* Hollander v. American Cynamid Co., 172 F.3d 192, 1999 (2d Cir. 1999).

In Count One of the Plaintiff's Amended Complaint, the Plaintiff has established a prima facie case for discrimination in violation of the ADEA. The plaintiff has alleged that he was over the age of forty at the time of his discharge, (Amended Complaint, Count One ¶ 60), and he therefore falls within the protected age group under the ADEA. *See* 29 U.S.C. § 631(a). The Plaintiff has alleged that he was qualified to perform the position of Assistant Manager, as Mr. Picard consistently commended the Plaintiff and advised him that he was performing well. (Amended Complaint, Count One ¶¶ 62, 63.) Additionally, the Plaintiff has alleged that he was discharged when he was given a lay-off notice on February 1, 2002. (Amended Complaint, ¶ 34.) Finally, the Plaintiff has alleged that he was replaced by a man who was 15 years younger than Plaintiff, (Amended Complaint, Count One ¶ 67), a fact that is sufficient to give rise to the inference that he was the victim of discrimination. *See* Tarshis v. Riese Org., 211 F.3d 30, 38 (2d Cir. 2000) (prong four of prima facie case may be satisfied by showing that position remained open following plaintiff's termination, or that he was replaced by someone outside of protected class). The Plaintiff, in his Amended Complaint, has therefore established a prima facie case of discrimination in violation of the ADEA.

It is notable that the Defendant did not move to dismiss Count Two of the Plaintiff's Complaint, discrimination on the basis of age in violation of Conn. Gen. Stat. § 46a-60(a)(1), which is analyzed under the same framework as claims for discrimination on the basis of age brought pursuant to the ADEA. *See* Cooke v. Prototype & Plastic Mold Co. 220 F. Supp.2d 104 (D. Conn. 2002) (Hall, J.), *citing* Levy v. Comm'n on Human Rights and Opportunities, 236 Conn. 96, 103, 671 A.2d 349 (1996). Defendant's sole argument for dismissal of Count One lies

8

not in the substance of Plaintiff's allegations, but rather on the fact that the count makes reference to Title VII. As discussed above, the Plaintiff has, by way of his Amended Complaint, deleted all references to Title VII and has alleged sufficient facts to support a claim for discrimination on the basis of age in violation of the ADEA. For the purposes of a motion to dismiss, the Court must accept the Plaintiff's allegations as set out in his complaint as true. Accordingly, the Court must DENY Defendant's Motion to Dismiss with respect to Count One.

### E. **Plaintiff has sufficiently alleged a claim for retaliation in violation of Conn. Gen. Stat. § 46a-60(a)(4) in Count Three of his Amended Complaint**

The Defendant next argues that the Plaintiff has failed to sufficiently allege a claim for retaliation in violation of Conn. Gen. Stat. § 46a-60(a)(4). Section 46a-60(a)(4) provides in relevant part that it is unlawful "[f]or any . . . employer . . . to discharge, expel *or otherwise discriminate against* any person because he has opposed any discriminatory employment practice . . . ." Conn. Gen. Stat. § 46a-60(a)(4) (emphasis added). In order to state a prima facie claim for retaliation under § 46a-60(a)(4), a plaintiff must allege that (1) he engaged in a protected activity under Connecticut law (2) the defendant was aware of plaintiff's participation in the protected activity, (3) the defendant took adverse action against the plaintiff based on the protected activity, and (4) a causal connection exists between the plaintiff's protected activity and the adverse action. *See* Shaw v. Shell Oil Prods. Co., 119 F.Supp. 2d 61, 67 (D. Conn 2000); Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993).

By way of his Amended Complaint, the Plaintiff has sufficiently established a prima facie case of retaliation in violation of Conn. Gen. Stat. § 46a-60(a)(4). The Plaintiff filed his complaint with the CHRO alleging discrimination on the basis of age in violation of Conn. Gen. Stat. § 46a-60(a)(1) on July 31, 2002, (Amended Complaint, Count Three ¶ 60), and therefore engaged in a protective activity. The Plaintiff has alleged that the Defendant owed him

9

outstanding vacation pay and commissions, and that on August 8, 2002, just one week later, Mr. Picard contacted him and offered him "less money than he was entitled to receive, based on his outstanding vacation pay and commissions" because he filed a complaint with the CHRO. (Amended Complaint, Count Three ¶ 64.) Finally, the Plaintiff has alleged that the Defendant owed him outstanding pay and commissions valued at more than $5000, and that Mr. Picard offered him less than he was entitled to because he filed his complaint with the CHRO. (Amended Complaint, Count Three ¶ 64.) Losses in the form of wages and benefits constitute adverse employment action. The causal connection between a defendant's actions and the adverse employment action "can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." Peters v. City of Stamford, 2003 U.S. Dist. LEXIS 4189, *citing* Cifra v. Gen. Elec. Co., 252 F.3d 205, 218 (2d Cir. 2001). The Plaintiff has therefore established a prima facie case that the Defendant violated § 46a-60(a)(4). Accordingly, the Court must DENY the Defendant's motion to dismiss with respect to Count Three.

### F. **Plaintiff has sufficiently alleged a claim for breach of implied contract in Count Four of his Amended Complaint**

The Defendant next argues that the Plaintiff has failed to sufficiently allege a claim for breach of implied contract. Defendant argues that because the Plaintiff has failed to allege any words, acts or conduct sufficient to establish an implied contract that the Plaintiff would not be terminated without just cause, he is merely an at-will employee.

"[A]ll employer-employee relationships not governed by express contracts involve some type of contract of employment. There cannot be any serious dispute that there is a bargain of some kind; otherwise the employee would not be working." (Internal quotation marks omitted.) Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 13, 662 A.2d 89 (1995). An employee's at-will status "may be modified by acts of the employer which are sufficiently

10

definite to establish an express contract between the parties." Kelly v. United States Show Corp., Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 42492 (November 5, 1993, Rush, J.). This requires "specific representations rather than expressions of intentions with regard to future employment." Id. *See also* D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 214-16, 520 A.2d 217 (1987).

Similarly, an implied-in-fact contract depends on agreement of the parties. Coelho v. Posi-Seal International, Inc., 208 Conn. 106, 111, 544 A.2d 170 (1988). Therefore, in order to state a claim for breach of implied contract, a plaintiff must allege that the defendant "agreed, either by words or actions or conduct, to undertake [some] form of actual commitment" to the plaintiff. (Citations omitted; internal quotation marks omitted.) Id., 112. "In the absence of [express contract] language . . . the determination of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact." Guadino v. Griffin Health Services Corp., 249 Conn. 523, 533, 733 A.2d 197 (1999). *See also*, Corriveau v. Jenkins Bros., 144 Conn. 383, 387, 143 A.2d 67 (1957) (whether parties have entered into such an agreement is a question of fact).

In Count Four of his Amended Complaint, Plaintiff has alleged that he was "continually told that if the sales position did not work out that [he] could at anytime request to be transferred back to his Foreman position." (Complaint, Count Four ¶ 60.) Plaintiff relied on these statements when he agreed to accept the position of Manager at the Old Saybrook store, and also when he agreed to accept the position of Assistant Manager at the Southport store. (Complaint, Count Four ¶ 61.) The Plaintiff has therefore set forth sufficient facts to establish that defendant "agreed, either by words or actions or conduct, to undertake [some] form of actual commitment" to him. Read in the light most favorable to the Plaintiff, such allegations are sufficient to

establish a claim for breach of implied contract. Accordingly, the Court must DENY Defendant's motion to strike with respect to Count Four.

### G. Plaintiff respectfully withdraws his claim for breach of implied covenant of good faith and fair dealing

### H. Plaintiff has sufficiently alleged a claim for promissory estoppel in Count Five of his Amended Complaint

Defendant next argues that the Plaintiff has failed to sufficiently allege a claim for promissory estoppel. Connecticut recognizes the doctrine of promissory estoppel as set forth in the Restatement (Second) Contracts § 90 (1982). *See* D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. at 206 (1987); Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 427 A.2d 385 (1980). Section 90 provides in relevant part that "[a] promise which the promisee should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Restatement (Second) Contracts § 90 (1982). For the doctrine to apply the representations must be "sufficiently promissory" and "sufficiently definite to support contractual liability." D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. at 206. Further, the promisee must change its position in reliance on the promise, thereby incurring some injury. Chotkowski v. Connecticut, 240 Conn. 246, 690 A.2d 368 (1997); Connecticut National Bank v. Voog, 233 Conn. 352, 659 A.2d 172 (1995).

Plaintiff, by way of his Amended Complaint has sufficiently set forth a claim for promissory estoppel. In Count Five of his Amended Complaint, the Plaintiff has alleged that he was "continually told [by Mr. Picard] that if the sales position did not work out that [he] could at anytime request to be transferred back to his Foreman position." (Amended Complaint, Count

12

Five ¶ 60.) Plaintiff relied on these statements when he agreed to accept the position of Manager at the Old Saybrook store, and also when he agreed to accept the position of Assistant Manager at the Southport store. (Amended Complaint, Count Five ¶ 61.) The Plaintiff has also alleged that Mr. Picard's statements were reasonably expected to induce the Plaintiff to accept the new positions, and he did accept both positions. (Amended Complaint, Count Five ¶ 62.) Finally, the Plaintiff has alleged that he relied upon the Defendant's promises to his detriment, and that he was terminated, without being offered the opportunity to return to his previous position. (Amended Complaint, Count Five ¶¶ 63, 64.) Read in the light most favorable to the Plaintiff, such allegations are sufficient to establish a claim for promissory estoppel. Accordingly, the Court must DENY Defendant's Motion to Strike with respect to Count Five.

### I. Plaintiff has sufficiently alleged a claim for negligent misrepresentation in Count Six of his Amended Complaint

Defendant next argues that the Plaintiff has failed to sufficiently allege a claim for negligent misrepresentation. "The essential elements of an action in fraud . . . are: (1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so to his injury." Miller v. Applyby, 183 Conn. 51, 55, 438 A.2d 811 (1981). "An actionable misrepresentation, whether knowingly, recklessly, negligently or innocently [made], must be made for the purpose of inducing action upon it." Id.

Negligent misrepresentation is a "failure to exercise reasonable care or competence in obtaining or communicating the information." D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. at 210; see also 3 Restatement (Second) Torts § 552 (1979). The Connecticut Supreme Court has long recognized liability for negligent misrepresentation and has held that even an innocent misrepresentation of fact may be actionable if the declarant has the

13

means of knowing, ought to know, or has the duty of knowing the truth. Citino v. Redevelopment Agency, 51 Conn. App. 262, 273, 721 A.2d 1197 (1998). Further, "[o]ne who in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." (Citation omitted; internal quotation marks omitted.) D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. at 218.

Mr. Picard, Defendant's President told the Plaintiff several times that if the new sales position did not work out, that the Plaintiff could at anytime request to be transferred back to his position of Foreman. (Amended Complaint, Count Six ¶ 60.) The Plaintiff relied on these statements when he agreed to accept the transfer to the position of Manager in Defendant's Old Saybrook store, and again when he agreed to accept the position of Assistant Manager in Defendant's Southport store. (Amended Complaint, Count Six ¶ 61.) A jury may reasonably find that the information provided to the Plaintiff by Mr. Picard was false and carelessly or recklessly provided to the Plaintiff. Clearly, the Plaintiff relied on such false information, all to his loss and detriment, because he was terminated without being afforded the opportunity to return to his previous Foreman position.

The Court should allow the Plaintiff to proceed on the merits of this claim, as "Courts liberally construe the pleadings in a way in order to sustain . . . a claim [for negligent misrepresentation], particularly where the allegations in a complaint indicate, on the face, that an employer failed to exercise reasonable care in making representations to an employee on which the employee relied to his detriment." D'Ulisse-Cupo v. Board of Notre Dame High School, 202

14

Conn. at 219-20. Accordingly, the Court must DENY Defendant's motion to dismiss with respect to Plaintiff's claim for negligent misrepresentation.

### J. Plaintiff respectfully withdraws his claim for wrongful discharge

## IV. Conclusion

By way of his Amended Complaint, dated November 17, 2003, the plaintiff has stated colorable and cognizable claims for the following: discrimination the basis of age in violation of the ADEA (Count One); retaliation in violation of Conn. Gen. Stat. § 46a-60(a)(4) (Amended Complaint, Count Three), breach of implied contract (Amended Complaint, Count Four), promissory estoppel (Amended Complaint, Count Five) and negligent misrepresentation (Amended Complaint, Count Six). The drastic measure of dismissal is not warranted and the plaintiff should be afforded an opportunity to proceed to trial on the merits of his claims. Accordingly, the Court must DENY Defendant's Motion to Dismiss in its entirely.

The Plaintiff,
Peter Sym

By:
Eugene N. Axelrod (CT00309)
The Employment Law Group, LLC
8 Lunar Drive
Woodbridge, CT  06525
(203) 389-6526
(203) 389-2656

## **CERTIFICATION**

This is to certify that a copy of the foregoing was sent this date via first class mail, postage prepaid to:

Michael P. Devlin, Esq.
Thomas A. Carroll, Esq.
Berchem, Moses & Devlin, P.C.
75 Broad Street
Milford, CT 06460

12/23/03
Date

Melissa Toddy
Commissioner of the Superior Court