UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

| | | |
|---|---|---|
| PETER SYM, | : | CIVIL ACTION NO. |
| | : | 3:03 CV 00932(SRU) |
| PLAINTIFF, | : | |
| | : | |
| v. | : | |
| | : | |
| ATLAS FENCE d.b.a. | : | |
| ATLAS OUTDOOR, | : | |
| | : | |
| DEFENDANT. | : | December 23, 2003 |

## AMENDED COMPLAINT

### Jurisdiction and Venue

1. This action arises under the ADEA as codified at 29 U.S.C. § 621 *et seq.*, the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60 *et seq.*, and state common law.

2. The jurisdiction of this court is founded upon 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

3. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. § 1391(b) in that the claims arose in this district and Plaintiff resides in this district.

4. Supplemental jurisdiction over Plaintiff's state law claims is invoked pursuant to 28 U.S.C. § 1367 as the claims arise out of the same transaction and occurrences as Plaintiff's federal claims.

5. Costs, expert witness fees and attorney's fees are sought pursuant to 42 U.S.C. § 1988.

6. Plaintiff filed a timely claim with the Connecticut Commission on Human Rights and Opportunities and the Equal Employment Opportunity Commission.

7. Plaintiff received a "Right to Sue" authorization from the Equal Employment Opportunity Commission on March 12, 2003.

8. Plaintiff received a "Release to Sue" authorization from the Connecticut Commission on Human and Opportunities rights on March 6, 2003.

### The Parties

9. Peter Sym, hereinafter referred to as the "Plaintiff," is a 54 year old male, born on April 15, 1948, and he resides at 70 Wiebe Avenue, Stratford, Connecticut, 06614.

10. Atlas Fence, doing business as Atlas Outdoor, hereinafter referred to as the "Defendant," is located at 30 Northeast Industrial Road, Branford, Connecticut, 06405.

### Preliminary Statement

11. Plaintiff seeks by this action to recover damages and other relief as a result of the Defendant's violation of ADEA, CFEPA and state common law.

### Facts

12. Defendant hired Plaintiff in March of 1997 as a wood worker.

13. Plaintiff performed his position with the Defendant in an above average manner at all times and, as a result, was provided with several promotions and raises as a result of his good work.

14. During the course of his employment, Plaintiff received four (4) merit raises and also received three (3) additional salary increases due to additional promotions.

15. Not long after being hired as a wood worker, Plaintiff was promoted to the position of Foreman of the Wood Shop.

16. Shortly thereafter, Plaintiff and Michael Picard, the President of Defendant, traveled to a conference in Nebraska in order to learn about the making of PVC fencing.

17. In 1998, in recognition of Plaintiff's superior performance and his new expertise in PVC fencing, Mr. Picard promoted Plaintiff to Shop Supervisor of the PVC Department.

18. In or about 2000, Mr. Picard offered the Plaintiff the position of Store Manager as part of a plan to open five or six freestanding sales locations.

19. Mr. Picard told the Plaintiff that he was a very valued employee and that if the new position did not work out or if Plaintiff did not prove to be fit for the sales position, Plaintiff could at any time be transferred back to his prior position of Foreman, running the PVC Shop.

20. Plaintiff spoke to Mr. Picard about his concerns and fears about transferring to a sales position, as he did not have any background in sales.

21. Mr. Picard assured him that if it did not work out, he could ask to return to his prior position of Foreman in the PVC shop at any time, and that he would be transferred back if he did not work out.

22. In reliance on Mr. Picard's assurances, Plaintiff accepted the position of Store Manager of the Old Saybrook store at the insistence and with the support of Mr. Picard.

23. After Plaintiff had been working as Store Manager for only three weeks, Mr. Picard told the Plaintiff that the Defendant was having difficulties with the Assistant Store Manager at its Southport location, and asked the Plaintiff to accept

3

a transfer to that position, with no loss of pay or benefits.

24. Mr. Picard assured Plaintiff that after one year of training in the store as an Assistant Manager, Plaintiff would take over as Manager, when Mr. Korfel, the current Store Manager, would be transferred to the Canton Store.

25. In reliance on these representations, Plaintiff accepted the new position of Assistant Manager at Defendant's Southport location in April, 2001.

26. Plaintiff again spoke to Mr. Picard about his concerns and fears about transferring to a sales position, and Mr. Picard again assured him that he could request a transfer back to his Foreman position at any time, and that he would be transferred if it did not work out.

27. Mr. Picard consistently assured the Plaintiff that he was doing a "great job" and he was insistent that Plaintiff continue in his current position as Assistant Manager.

28. On or about September of 2001, Plaintiff again expressed his concerns about his sales position to Mr. Picard, and Vice President John Nuvino.

29. Mr. Picard again assured the Plaintiff that he was doing fine and that he could request a transfer back to the Foreman position at any time, and that he would be transferred if he did not work out.

30. In reliance on these assurances, the Plaintiff continued in his position as an Assistant Manager and his supervisor was Mr. Korfel, Store Manager.

31. Neither Plaintiff nor Mr. Korfel were ever informed that Defendant's Southport store was not meeting expectations in sales or profit projections.

32. Plaintiff never received any negative feedback from Mr. Picard, Mr. Nuvino or Mr. Korfel.

33. Plaintiff never received any verbal or written warnings concerning his job performance.

34. On February 1, 2002, with no forewarning or indication, Plaintiff received a layoff slip signed by Greg Guidone, General Manager and Peter Terzakis, Office Manager, which stated that the Plaintiff was being laid off for "lack of work."

35. Plaintiff was later told that he was being laid off due to poor sales and profits in his store location.

36. Plaintiff was surprised and shocked when he received the layoff slip, as he had not previously been informed of any "lack of work" or poor sales; in fact, to the best of Plaintiff's knowledge, Plaintiff's location held the highest profit margin compared to Defendant's other locations.

37. The Plaintiff made several telephone calls to Mr. Picard to inquire about his layoff, but Mr. Picard would not return the telephone calls.

38. During the first week of February, 2002, the Plaintiff spoke with Bob Siracusa, Controller, and inquired about the status of his layoff.

39. Mr. Siracusa advised the Plaintiff that he did not know that status, and he offered to send the Plaintiff his 401(k) paperwork.

40. The Plaintiff continued to call and leave messages for Mr. Picard, but he received no response.

41. On April 29, 2002 the Plaintiff saw an advertisement in the local paper for Assistant Managers and several other positions for Defendant's several locations.

42. Plaintiff telephoned Susan Mignosa at Defendant's main office in Branford, CT and Ms. Mignosa told the Plaintiff that they had "not forgotten about him."

43. Plaintiff requested that Ms. Mignosa forward to him a check for his outstanding vacation and commissions.

44. Ms. Mignosa told Plaintiff that she would "look into it," but she never sent Plaintiff's outstanding checks.

45. On or about May 14, 2002, Plaintiff spoke with Rudy Sorrentino, the new Controller, regarding his outstanding vacation and commission checks.

46. Plaintiff explained his work history and recent layoff to Mr. Sorrentino.

47. Mr. Sorrentino told Plaintiff that he would look into the matter and that the Plaintiff would get what he was entitled to.

48. Mr. Sorrentino advised the Plaintiff that he would speak with Mr. Picard and get back to the Plaintiff.

49. Plaintiff had several conversations with Mr. Sorrentino over the course of the next few weeks.

50. Mr. Sorrentino provided the Plaintiff with Mr. Picard's cell phone number, advised the Plaintiff that he should call Mr. Picard and he assured Plaintiff that something would be done.

51. Mr. Sorrentino requested a settlement figure from the Plaintiff, which he provided.

52. Although he left several messages, Plaintiff received no telephone call or settlement offer from Mr. Picard.

53. Plaintiff filed a complaint with the Commission on Human Rights and Opportunities on July 31, 2002.

54. On August 8, 2002, following the receipt of Plaintiff's filed complaint with the

Commission, Mr. Picard contacted the Plaintiff for a conference call between Plaintiff, John Uvino, Rudy Sorrentino and Plaintiff's wife.

55. Mr. Picard told the Plaintiff that he was sorry, that he had exercised poor judgment and that he was going through a divorce.

56. Mr. Picard further stated that the Plaintiff was a dedicated worker for over five years and that lawyers did not need to get involved.

57. Mr. Picard then offered to settle with Plaintiff for $5,000, if he would just "go away."

58. The Plaintiff requested and was entitled to an amount higher than the $5,000 that was offered, but Mr. Picard refused the offer.

59. Plaintiff called Mr. Picard on August 15th, 19th and 23rd, but Mr. Picard never returned his calls.

**Count One:** **Discrimination on the Basis of Age in Violation of Age Discrimination in Employment Act**

1-59. Plaintiff hereby incorporates Paragraphs 1 through 59 as if fully set forth herein.

60. Plaintiff is a 54 year old male who was employed with the Respondent for five (5) years and who performed his position in an above-average manner at all times.

61. Plaintiff never received any complaints or warnings concerning his job performance.

62. Mr. Picard consistently advised the Plaintiff that he was doing a great job and was insistent that the Plaintiff continue in his current position.

63. Mr. Picard was qualified to perform the positions of Assistant Sales Manager as well as the positions of Foreman and Shop Supervisor of the PVC Department.

64. Plaintiff was advised that his position was being eliminated due to lack of work, based on poor sales and poor profit margins and his employment was terminated.

65. Although the Defendant allegedly laid Plaintiff off due to "lack of work", it later placed an advertisement for Assistant Managers in the local newspaper.

66. Defendant refused to consider Plaintiff for the position, although he was qualified; this was contrary to Defendant's policy of re-hiring laid off employees.

67. Defendant terminated the Plaintiff and replaced his position with another employee who was 15 years younger than the Plaintiff.

68. Defendant's conduct is unlawful and in violation of the ADEA.

69. As a result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

70. Plaintiff seeks damages as a result of Defendant's unlawful conduct.

**Count Two:** **Discrimination on the Basis of Age in Violation of Conn. Gen. Stat. § 46a-60(a)(1)**

1-59. Plaintiff hereby incorporates Paragraphs 1 through 59 as if fully set forth herein.

60. Plaintiff is a 54 year old male who was employed with the Respondent for five (5) years and who performed his position in an above-average manner at all times.

61. Plaintiff never received any complaints or warnings concerning his job performance.

62. Mr. Picard consistently advised the Plaintiff that he was doing a great job and was insistent that the Plaintiff continue in his current position.

63. Plaintiff was advised that his position was being eliminated due to lack of work, based on poor sales and poor profit margins and his employment was terminated.

64. Although the Defendant allegedly laid Plaintiff off due to "lack of work", it later placed an advertisement for Assistant Managers in the local newspaper.

65. Defendant refused to consider Plaintiff for the position, although he was qualified; this was contrary to Defendant's policy of re-hiring laid off employees.

66. Defendant terminated the Plaintiff and replaced his position with another employee who was 15 years younger than the Plaintiff.

67. Defendant's conduct is unlawful and in violation of Conn. Gen. Stat. § 46a-60(a)(1).

68. As a result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

69. Plaintiff seeks damages as a result of Defendant's unlawful conduct.

**Count Three:** **Retaliation in Violation of Conn. Gen. Stat. § 46a-60(a)(4)**

1-59. Plaintiff hereby incorporates Paragraphs 1 through 59 as if fully set forth herein.

60. The Plaintiff filed a complaint with the Commission on Human Rights and Opportunities on July 31, 2002.

61. Defendant owed the Plaintiff outstanding vacation pay and commissions.

62. Following the receipt of Plaintiff's filed complaint with the Commission, on August 8, 2002, Mr. Picard contacted the Plaintiff via a conference call with the Plaintiff, John Uvino, Rudy Sorrentino and the Plaintiff's wife.

63. Although the Plaintiff was entitled to more than $5,000, Mr. Picard offered the Plaintiff a $5,000 to "go away".

64. Defendant offered Plaintiff less money than he was entitled to receive, based on his outstanding vacation pay and commissions, because Plaintiff filed a complaint with the CHRO.

65. Defendant's conduct is unlawful and in violation of Conn. Gen. Stat. § 46a-60(a)(4).

66. As a result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

67. Plaintiff seeks damages as a result of Defendant's unlawful conduct.

**Count Four:**      **Breach of Implied Contract**

1-59. Plaintiff hereby incorporates Paragraphs 1 through 59 as if fully set forth herein.

60. Mr. Picard continually told the Plaintiff that if the sales position did not work out that the Plaintiff could at anytime request to be transferred back to his Foreman position.

61. Plaintiff relied on these statements when he agreed to accept the position of Manager at Defendant's Old Saybrook store, and again when he agreed to accept the position of Assistant Manager in Defendant's Southport store.

62. Defendant, by its words, conduct or actions, represented to the Plaintiff that he would request to be transferred back to his Foreman position at any time, and that if he did not work out, he would be transferred back to that position; this

10

constituted an implied contract.

63. Defendant breached the foregoing implied contract when it terminated Plaintiff without cause and in spite of his above-average job performance, without offering the Plaintiff the opportunity to return to his previous position of Foreman.

64. As a result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

65. Plaintiff seeks damages as a result of Defendant's unlawful conduct.

**Count Five:   Promissory Estoppel**

1-59. Plaintiff hereby incorporates Paragraphs 1 through 59 as if fully set forth herein.

60. Mr. Picard continually told the Plaintiff that if the sales position did not workout that the Plaintiff could at anytime request to be transferred back to his Foreman position.

61. Plaintiff relied on these statements when he agreed to accept the position of Manager at Defendant's Old Saybrook store, and again when he agreed to accept the position of Assistant Manager in Defendant's Southport store.

62. Mr. Picard's statements were reasonably expected to induce action on the part of the Plaintiff and did induce action on the part of the Plaintiff.

63. Plaintiff relied upon Defendant's promises to his detriment.

64. Defendant failed to fulfill the foregoing promises when it terminated Plaintiff without offering him the opportunity to return to his previous position of Foreman.

65. As a result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

66. Plaintiff seeks damages as a result of Defendant's unlawful conduct.

**Count Six:**     **Negligent Misrepresentation**

1-59. Plaintiff hereby incorporates Paragraphs 1 through 59 as if fully set forth herein.

60. Mr. Picard continually told the Plaintiff that if the sales position did not workout that the Plaintiff could at anytime request to be transferred back to his Foreman position; these statements constituted false representations.

61. Plaintiff relied on Defendant's false representations when he agreed to accept the position of Manager at Defendant's Old Saybrook store, and again when he agreed to accept the position of Assistant Manager in Defendant's Southport store.

62. Mr. Picard's statements were reasonably expected to induce action on the part of the Plaintiff and did induce action on the part of the Plaintiff.

63. As a result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

64. Plaintiff seeks damages as a result of Defendant's unlawful conduct.

**Prayer for Relief**

Where for Plaintiff prays that this Court will:

1. retain and maintain jurisdiction over this matter;

2. award compensatory damages;

3. award punitive damages pursuant to statutory authority;

4. award punitive damages pursuant to Connecticut common law;

5. award attorney's fees, expert witness fees, and costs;

6. grant Plaintiff a trial by jury; and

7. award such other relief as the Court deems just and proper.

The Plaintiff,
Peter Sym

By:_____
Eugene N. Axelrod  (CT00309)
The Employment Law Group LLC
8 Lunar Drive
Woodbridge, CT 06525
(203) 389-6525
(203) 289-2656

**CERTIFICATION**

This is to certify that a copy of the foregoing was sent this date via first class mail, postage prepaid to:

Michael P. Devlin, Esq.
Thomas A. Carroll, Esq.
Berchem, Moses & Devlin, P.C.
75 Broad Street
Milford, CT  06460

12/23/03
Date

Melissa Toddy
Commissioner of the Superior Court